**In re Donald R. McINTOSH and June V. McIntosh, Debtors.**

**Gary J. GOKEY and Deborah Gokey, Plaintiffs,**

**v.**

**Don McINTOSH, Sr., Defendant.**

Bankruptcy No. 86–B–10201–E.
Adv. No. 87–M–1047.

United States Bankruptcy Court, D. Colorado.

Aug. 5, 1988.

Bradley P. Pollock, Littleton, Colo., for plaintiffs.

Leslie E. Nunn, Burlington, Colo., for debtor/defendant.

**MEMORANDUM OPINION AND ORDER**

SIDNEY B. BROOKS, Bankruptcy Judge.

THIS MATTER comes before the Court on the Debtor/Defendant's Application for Attorney's Fees and/or Imposition of Sanctions after the Plaintiffs filed their Motion to Dismiss with Prejudice their own Complaint contesting the discharge in bankruptcy of the Debtor, and Motion to Vacate Pre–Trial Conference one day prior to the scheduled pre-trial conference. Hearings on the Defendant's Application were heard in Open Court on May 3, 1988 and June 21, 1988.

Defendant requested that the Court award attorney's fees and costs incurred in this adversary proceeding to reimburse the

---

Defendant for what he alleges are burdensome fees resulting from unnecessary, repetitive, and harassing litigation procedures undertaken by the Plaintiffs. Defendant seeks an Order requiring Plaintiffs to pay his attorney's fees, as sanctions or otherwise, for improperly initiating and pursuing the within adversary claim.

## BACKGROUND AND
## FINDINGS OF FACT

The Court has reviewed the file, heard argument from counsel, considered all pleadings, motions, and affidavits filed by the Defendant and Defendant's counsel. From such examination of the record, the Court recites the following background and findings of fact:

1. This adversary proceeding is the *second* such adversary proceeding filed by Plaintiffs against the Debtor/Defendant. The within proceeding is virtually identical, in allegations, management of case, and conclusion, to the first adversary case. The first case, Adversary Proceeding No. 87–E–269, was commenced by Plaintiffs' counsel, Mr. Bradley Pollock, on April 9, 1987, and subsequently voluntarily withdrawn by counsel on May 27, 1987 after Chief Judge Charles E. Matheson issued on April 23, 1987 a Show Cause Order as to why Plaintiffs' Complaint should "... not be dismissed and sanctions imposed for the filing ... contrary to the provisions of Bankruptcy Rule 9011." This first proceeding before Judge Matheson involved various procedural delays, confusion, and problems, as well, and Mr. Pollock belatedly admitted to the Court that the Complaint had been filed "inadvertently." Mr. Pollock further admitted that the initial adversary proceeding was an attempt to bar a dis-

charge of debt which was plainly dischargeable under Debtor's Chapter 13.[1]

2. Debtor converted to a Chapter 7 case in June, 1987. The within Adversary Proceeding (87–M–1047) was prepared on December 28, 1987 and filed by Mr. Pollock on December 30, 1987, *after* the expiration of the sixty day time period within which B.R. 4007 allows for such filing. Subsequently, Mr. Pollock pursued the action without any Court Order extending the time to do so. Again, confusion and disruption pervaded the proceedings because (a) Mr. Pollock evidently filed Complaints simultaneously in the old, dismissed adversary proceeding (87–E–269) as well as this new adversary proceeding (87–M–1047), and (b) Mr. Pollock misnumbered certain pleadings so that they ended up in the wrong file and/or before the wrong Judge and/or got "lost."[2]

3. In the within case, the Summons was issued by the Court on January 8, 1988. Contrary to the provisions of B.R. 7004(f), the Summons and Complaint were served by mail by Mr. Pollock on the Defendant on Thursday, February 4, 1988, only four days before the deadline for filing an Answer in the case, Monday, February 8, 1988. This compelled Defendant's counsel to prepare and file a Request for Extension of Time Within Which to File an Answer.

4. A pre-trial conference was scheduled in this adversary proceeding, in the ordinary course, for May 3, 1988 and notice of the pre-trial conference was mailed by the Court to counsel of record on March 22, 1988. One day prior to the scheduled pre-trial conference, Plaintiffs filed a Motion to Dismiss with Prejudice and Motion to

---

1. These and other recited facts relative to the first adversary proceeding are derived directly from the Court file.

2. Many documents filed in this case by Mr. Pollock are identified with various incorrect case numbers. This resulted in misdirection and misfiling of pleadings in the Clerk's office, "lost" documents, and tardy consideration of or responses to pleadings. This Court had previously informed counsel (May 9 and May 31, 1988) that such practices, being disruptive and confusing, should be avoided.

Vacate Pre-Trial Conference. Mr. Pollock failed to notify this Court that he had filed with the Clerk of the Bankruptcy Court such a Motion. He notified Defendant's counsel, Leslie Nunn, of the filing the afternoon prior to the hearing. Only through a subsequent telephone inquiry by Mr. Nunn, did the Court realize that the pre-trial conference was rendered moot and unnecessary by Plaintiffs' filed pleading. Mr. Nunn, however, requested that the scheduled pre-trial conference time be reserved for a hearing nonetheless and he be allowed to explain to the Court the lost time, confusion, difficulty, and unnecessary costs and attorney's fees this adversary proceeding had caused to his client.

5. By way of attorney's Affidavit filed by the attorney for the Defendant, Leslie E. Nunn, P.C., it is represented that approximately 20 hours and five minutes was spent by counsel representing the Defendant in these two, voluntarily dismissed adversary proceedings. At counsel's customary hourly billing rate of $100.00 per hour, this time represents $2,008.33 in attorney's fees. Defendant incurred an additional $21.22 in costs for a total of fees and expenses of $2,029.55.[3]

6. Plaintiffs' maintain that the adversary proceeding was filed in good faith, but that the Plaintiff, Mr. Gokey, incurred certain physical ailments and that he was "not physically or financially able to proceed with the prosecution" of the case.

7. The Plaintiffs argue vigorously that the within adversary proceeding was well-founded and brought in good faith. They maintain that it was initiated for purposes of redressing a wrong and attempting to determine that an obligation of the Debtor was not dischargeable under Section 523 of the Bankruptcy Code.

8. Equally vehemently, the Defendant maintains that the claims were groundless and frivolous and brought solely for the purpose of harassing and intimidating the Defendant in violation of his rights under the Bankruptcy Code. The Defendant maintains that not only was the action brought in bad faith, it was conducted in a procedural manner such as to increase costs, cause confusion, and compound the Debtor's problems.

### DISCUSSION AND ORDER

■ The Court cannot, in this forum and under these circumstances, attempt to "try," or decide, this case on its merits or speculate as to its outcome had there been a trial. The Plaintiffs voluntarily sought dismissal, with prejudice, of their Complaint. While the Court has before it strong allegations of the Plaintiffs and arguments of the parties, it has no facts, evidence, testimony, or a sound basis on which to make any judgments as to the legitimacy or strength of the Plaintiffs' allegations, or merits of the two Complaints.

By contrast, the Court does have before it the facts and procedural history of the case as reflected in the file and by arguments of counsel. The Court also is confronted with the simple conclusion that the adversary proceedings, actually two proceedings, were commenced and pursued by the Plaintiffs, but both were voluntarily dismissed. The cases were, each, laced with procedural errors and legal, as well as practical, defects. The proceedings cost the Debtor over $2,000.00. The cost in these adversary proceedings was incurred through no fault, no error or no "inadvertence" of the Debtor or Debtor's counsel.

When Plaintiffs summarily abandoned the case, the Defendant was denied the

---

3. Mr. Pollock, generally, objects to Debtor's counsel's fees, but does so only on unspecified, general terms. Mr. Pollock failed to utilize a limited opportunity for discovery granted by the Court on the issues of attorney's fees and sanctions. The tasks performed by counsel appear necessary, under the circumstances, and the hours and fees charged appear reasonable.

opportunity for his day in Court, or the chance to demonstrate his ability to defend the case, on the merits. Had there been a trial on the merits, then perhaps, the Defendant might have been entitled to recoupment of his attorney's fees under statute or other available theories of law. 11 U.S.C. § 523(d).

If the allegations in a case were determined to be groundless and frivolous, or harassing, or done in a vexatious manner, then other statutory provisions and theories would have allowed an award of attorney's fees. These would include, but not necessarily be limited to: (1) Bankruptcy Rule 9011; *Burkhart Through Meeks v. Kinsley Bank,* 804 F.2d 588 (10th Cir. 1986); *Skies Unlimited, Inc. of Colorado v. King,* 72 B.R. 536 (Bankr.D.Colo.1987); (2) 28 U.S.C. § 1927; *Braley v. Campbell,* 832 F.2d 1504 (10th Cir.1987); (3) The inherent authority of the Court to award attorney's fees, or assessments, where justified and appropriate. *In re Silver,* 46 B.R. 772, (D.Colo.1985); *In re Quintana,* 43 B.R. 668 (Bankr.Colo.1984); *Matter of Sanction of Baker,* 744 F.2d 1438 (10th Cir.1984); and (4) F.R.Civ.P., Rule 16(f); *Matter of Sanction of Baker, supra.*

The Court will not assume that these Plaintiffs acted in a frivolous or groundless manner by initiating the within adversary proceeding. Indeed, it is assumed that all litigants initiate adversary proceedings in good faith, with good intentions, and for purposes contemplated within the Bankruptcy Code. Having stated that conclusion, nonetheless, the fact is inescapable that the Defendant in this case incurred over $2,000.00 in unreimbursed, unnecessary attorney's fees.

The Court here is faced with a *series of procedures* undertaken by Plaintiffs' counsel which clearly required unnecessary legal services being rendered for the Debtor and unnecessary legal fees being incurred by the Debtor. There is a series of procedural missteps undertaken by Plaintiffs' counsel beginning with (1) the initial Complaint prepared and filed *"inadvertently"* to seek an exception to discharge, (2) of a debt *plainly dischargeable* under Chapter 13 of the Bankruptcy Code, followed by (3) a tardy and improper filing of a second Complaint, (4) pursued without a Court Order allowing same, and (5) effecting tardy service of the Summons and Complaint on the Defendant. This was followed by (6) the summary, unilateral eleventh hour cancellation of the pre-trial conference without proper notice. Each of these steps simply increased costs and attorney's fees to the Defendant without any justification whatsoever.

Occasional errors by litigants and counsel are certainly understandable and, frankly, expected. They are also, not incidentally, sometimes excusable. *See, Gooch v. Skelly Oil Co.,* 493 F.2d 366, 368 (10th Cir.1974); *In re O'Connor,* 85 B.R. 590, 592 (W.D.Okla.1987); *In re Specialty Plastics, Inc.,* 85 B.R. 32 (W.D.Pa.1988).

Plaintiffs' counsel's string of missteps, however, reflects a cavalier attitude, neglect, or an extreme lack of care and responsible conduct in proceeding with litigation.[4] If not intentional, still the inadvertence and neglect demonstrated in management of Plaintiffs' claims here is more than casual or excusable.[5]

---

**4.** It is significant to this decision that the objectionable practices described in these two adversary proceedings do not appear to be isolated or exceptional episodes. The Court takes judicial notice of similar conduct by Mr. Pollock, as well as the routine filing of motions to continue and efforts to delay hearings, in other cases: (1) *In re William J. Conway, Jr.,* Adversary Proceeding No. 84–G–822, where Judge Matheson initiated hearings on sanctions for Mr. Pollock and his partner, Gary Bell, Jr., and (2) *In re Nucor, Inc.,* Case No. 88–B–03957–A, where the undersigned Judge has, on at least several prior occasions, alerted counsel of problems created and/or the need to eliminate procedural delays, tardy filings, and confusion in case management.

**5.** For purposes of determining when a party's conduct, or counsel's conduct, warrants assessment of attorney's fees, the distinction between neglect and excusable neglect can be useful, perhaps decisive. The Tenth Circuit has made it clear and has consistently applied an excusable neglect standard in a firm and well defined manner. *Gooch v. Skelly Oil Co., supra; Buckley v. United States,* 382 F.2d 611 (10th Cir. 1967), *cert. denied,* 390 U.S. 997, 88 S.Ct. 1202, 20 L.Ed.2d 914 (1968); *Maryland Casualty Co. v. Conner,* 382 F.2d 13 (10th Cir.1967).

For assessment of attorney's fees the law does not require a contumacious attitude, a chronic failure to perform, malice by parties or counsel, or subjective bad faith.[6] *Matter of Sanction of Baker, supra* at 1440; *Braley v. Campbell, supra* at 1512; *Burkhart Through Meeks v. Kinsley Bank, supra* at 589; *Skies Unlimited, Inc. of Colorado v. King, supra* at 538.

> Alexander [plaintiff's attorney] argues that sanctions under either Rule 38 or § 1927 should be imposable against an attorney personally only for subjective bad faith. We disagree. That standard is virtually impossible to apply. *Braley v. Campbell, supra* at 1512.

Rather, demonstrated attorney incompetence, negligence, cavalier conduct, reckless indifference to the law or professional standards, are each ample reason, standing alone, to assess attorney's fees or impose appropriate sanctions. *Braley v. Campbell, supra* at 1511; *M.E.N. Co. v. Control Fluidics, Inc.,* 834 F.2d 869, 873 (10th Cir. 1987); *In re Quintana, supra* at 669.

> We believe the proper standard under ... Section 1927 is that excess costs, expenses, or attorney's fees are imposable against an attorney personally for conduct that, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court. *Braley v. Campbell, supra* at 1512.

It is also, perhaps, equally important that simple concepts of fairness and equity demand that unnecessary costs and attorney's fees be paid for by the responsible party.

> These provisions [28 U.S.C. § 1927], as contrasted with the courts' more general disciplinary powers, [footnote omitted] focus upon conduct in specific litigation that imposes unreasonable and unwarranted burdens on the court and opposing parties. *Braley v. Campbell, supra* at 1510.

> A lawyer's reckless indifference to the law may impose substantial costs on the adverse party. *Section 1927 permits a court to insist that the attorney bear the cost of his own lack of care.* (Emphasis added.) *Braley v. Campbell, supra* at 1511.

While accidents may happen, and "inadvertence" may cause events to be occasioned, the resultant cost of such mistakes should not be borne by otherwise innocent persons. If mistakes are made, particularly a series of continuing mistakes, then the party responsible for causing them to occur should pay the consequential expenses. It is manifestly unfair to have an innocent Debtor bear the additional cost of unnecessary legal fees resulting from counsel's mistakes, or more apropos to this situation, his series of mistakes.

Bankruptcy Rule 9011 is of particular importance in this circumstance.[7] It was

---

The "excusable neglect" standard is, generally, given strict application. The Tenth Circuit requires a *"real showing"* of excusable neglect, for example, in allowing an untimely filing of a notice of appeal. *Gooch v. Skelly Oil Co., supra* at 368; *In re O'Connor, supra* at 591. One Bankruptcy Court has defined three principal elements of excusable neglect to be proved, under a strict standard, as: (1) good faith by the party seeking extension of time, (2) a reasonable basis for non-compliance, and (3) a lack of prejudice to the opposing party. *In re Tinnell Traffic Services, Inc. (Edmondson v. Bradford–White Corp.),* 43 B.R. 280, 282 (M.D.Tenn.1984) (citing additional cases); *In re O'Connor, supra* at 592.

**6.** For examples: (1) F.R.Civ.P., Rule 16(f), is intended "to give courts very broad discretion to use sanctions where necessary to insure not only that lawyers and parties refrain from contumacious behavior, already punishable under

the various other rules and statutes, but that they fulfill their high duty to insure the expeditious and sound management of the preparation of cases for trial." *Matter of Sanction of Baker, supra* at 1440; and (2) "attorney incompetence" or "neglecting" cases may be a sufficient basis for default judgment or imposition of sanctions. *M.E.N. Co. v. Control Fluidics, Inc.,* 834 F.2d 869, 873 (10th Cir.1987).

**7.** B.R. 9011 states, in pertinent part: "(a) *Signature.* Every petition, pleading, motion and other paper served or filed in a case under the Code on behalf of a party represented by an attorney ... shall be signed by at least one attorney of record in the attorney's individual name.... The signature of an attorney or a party constitutes a certificate that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief formed after reasonable inquiry

specifically "adopted in an effort to protect against the filing of unwarranted litigation." *Skies Unlimited, Inc. of Colorado v. King, supra* at 538.

The "new" rule, applied in *Burkhart Through Meeks v. Kinsley Bank, supra,* and followed in *Skies Unlimited, Inc. of Colorado v. King, supra,* imposes a *minimum* obligation of responsible conduct on counsel:

> 'The new language stresses the need for some prefiling inquiry into both the facts and the law to satisfy the affirmative duty imposed by the rule. The standard is one of reasonableness under the circumstances. See *Kinee v. Abraham Lincoln Fed. Sav. & Loan Ass'n,* 365 F.Supp. 975 (E.D.P.A.1973). This standard is more stringent than the original good-faith formula and thus it is expected that a greater range of circumstances will trigger its violation. See *Nemeroff v. Abelson,* 620 F.2d 339 (2d Cir. 1980)....' *Burkhart Through Meeks v. Kinsley Bank, supra* at 589.

This standard, when measured against the legal insufficiency and procedural deficiencies of the two adversary proceedings filed by Mr. Pollock, compels a finding that assessment of attorney's fees is here appropriate and necessary:

> Under these circumstances [where Complaint filed to 'harass' or place 'unwarranted pressure' on the Debtor], it is not only appropriate, but is required by the provisions of the Rule, that the Court impose sanctions against counsel for the filing of the complaint. *Skies Unlimited, Inc. of Colorado v. King, supra* at 539.
>
> We have no doubt in this case that sanctions of some kind are not only appropriate, but required. *M.E.N. Co. v. Control Fluidics, Inc., supra* at 873.

If attorney's fees are to be properly awarded, then the Court must try and fairly assess the obligation against the responsible party. *M.E.N. Co. v. Control Fluidics, Inc., supra* at 873.

> If the fault lies with the attorneys, that is where the impact of sanction should be lodged. If the fault lies with the clients, that is where the impact of the sanction should be lodged. *Matter of Sanction of Baker, supra* at 1442.
>
> [T]he trial court is to consider, insofar as practical, where the fault lies for noncompliance. The impact of any sanction should then be directed at the lawyer or the party depending upon who is at fault. *Smith v. U.S.,* 834 F.2d 166, 171 (10th Cir.1987).

■ Based on the record in this case, it is the unqualified opinion of this Court that each of the reasons for which attorney's fees are properly awarded stem from counsel's conduct, not that of the clients. The strategy employed in pressing the Plaintiffs' claims, the tactics used by counsel, the preparation and filing of "inadvertent" pleadings, the series of procedural errors, the tardy filings and service of process, all are the products of counsel, not of the clients. Consequently, attorney's fees awarded shall be paid by counsel for the Plaintiffs, Mr. Pollock.

IT IS THEREFORE ORDERED that Debtor's Application for Attorney's Fees and/or Imposition of Sanctions is hereby GRANTED. Counsel for the Plaintiffs, Bradley Pollock, shall pay the sum of $2,029.55 to the Debtor as and for the Debtor's attorney's fees and costs, which payment shall be made on or before twenty (20) days after this Order becomes final and nonappealable.

■

it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass, to cause delay, or to increase the cost of litigation.... If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it, the represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee."